1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8
9   BILLY R. THOMPSON,                          CASE NO.  1:11-cv-01198-LJO-GBC (PC)

10                       Plaintiff,

11          v.                                  ORDER DISMISSING DELIBERATE
                                                INDIFFERENCE MEDICAL TREATMENT
                                                CLAIM
12   THATCHER, et al.,

13                       Defendants.            ORDER DIRECTING CLERK OF THE COURT
                                                TO ADMINISTRATIVELY REDESIGNATE
                                                CASE AS A REGULAR CIVIL ACTION
14

15   _____/        (Doc. 1)

16

17   **I.      Procedural History**

18           Billy R. Thompson ("Plaintiff") was a state prisoner at the time of filing the complaint and

19   is proceeding pro se and in forma pauperis, in this civil rights action pursuant to 42 U.S.C. § 1983.

20   On July 20, 2011, Plaintiff filed his original complaint which is currently before the Court.  Doc. 1.

     **II.     Screening Requirement**
21
             The Court is required to screen complaints brought by prisoners seeking relief against a
22
     governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The
23
     Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
24
     "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek
25
     monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).
26
     "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall
27
     dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a
28

1

1   claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

2        A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

3   which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in

4   support of the claim or claims that would entitle him to relief. *See Hishon v. King & Spalding*, 467

5   U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Synagogue v.*

6   *United States*, 482 F.3d 1058, 1060 (9th Cir. 2007); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898

7   (9th Cir. 1986). In determining whether to dismiss an action, the Court must accept as true the

8   allegations of the complaint in question, and construe the pleading in the light most favorable to the

9   plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22

10  (1969); *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

11

12  **III.    Plaintiff's Complaint**

13       Plaintiff is currently on parole. The events central to Plaintiff's complaint occurred during

14  Plaintiff's arrest in Bakersfield by officers from the Bakersfield Police Department (BPD) and his

15  detention at the Bakersfield Police Department Station (BPDS) in Bakersfield, California. Doc. 1.

16  In the complaint, Plaintiff names the following as defendants in this action: 1) Thatcher (Sergeant

17  at BPD); 2) J. Lewis (Officer at BPD); 3) A. Paiz (Officer at BPD); 4) D. Eddy (Officer at BPD); 5)

18  Finney (Officer at BPD); 6) T. King (Officer at BPD); 7) E. Littlefield (Officer at BPD); 8) B.

19  Stratton (Officer at BPD); 9) R. Kroeker (Officer at BPD); and 10) Gregory (Officer at BPD). Doc.

20  1 at 2-3. Plaintiff seeks declaratory, injunctive and monetary relief. Doc. 1 at 10.

21       Plaintiff alleges that On August 8, 2009, at or around 7:30 p.m., while talking to people in

22  a living room, Plaintiff heard a loud bang at the door. Doc. 1 at 3-4. Thinking that the noise was

23  from rival gang members, Plaintiff ran to the back room an escaped by jumping out of the back

24  window. Doc. 1 at 4. As Plaintiff reached the wooden fence he hear someone yell "Your mother

25  fucking ass is going to pay for running." Doc. 1 at 4. Plaintiff jumped onto the fence and then

26  finally realized that it was police officers pursuing him, not rival gang members. Doc. 1 at 4.

27       Defendant Lewis yanked Plaintiff by his shirt collar and slammed his face into the ground,

28  pining Plaintiff's left arm under his body and knocking the wind out of his lungs. Doc. 1 at 4. At

that point Plaintiff was incapable of any resistance.  Doc. 1 at 4.  Defendant Lewis started punching the left side Plaintiff's face over thirteen times with a closed fist while yelling "Gang task force you stupid nigger. Don't fucking run from us punk." Doc. 1 at 4.  As Plaintiff tried to move his left arm from under his stomach to shield his face, Defendant Paiz grabbed Plaintiff's arm and pulled it to reveal Plaintiff's face and allow Defendant Lewis to continue to punch Plaintiff.  Doc. 1 at 4. Defendant Paiz bent Plaintiff's arm back and forcefully thrust his knee into Plaintiff's ribs while yelling "Gang task force. Stop fucking resisting Thompson." Doc. 1 at 4.  Plaintiff screamed, "Man I ain't resisting. I'm down! I'm down!" Doc. 1 at 4-5.

Defendant Paiz began to repeatedly punch Plaintiff, striking Plaintiff in the temple, forehead and face while yelling, "Motherfucker, don't run from us." Doc. 1 at 5.  While Defendants Lewis and Paiz continued to punch Plaintiff, Defendant Finney told them "Hold on so I can cuff this asshole" and Defendants Lewis and Paiz stopped beating Plaintiff.  Doc. 1 at 5.  Then Defendant Finney punched Plaintiff in the neck, grabbed Plaintiff's left arm which Plaintiff willingly placed behind his back and Defendant Finney cuffed Plaintiff extra tight and rolled Plaintiff on his left side. Doc. 1 at 5.  Then Defendant Finney raised his flash light (or metal type object) above his head and began beating Plaintiff in the legs, torso and arm.  Doc. 1 at 5.  Then Defendants Lewis and Paiz joined to strike Plaintiff with their flash lights or metal objects.  Doc. 1 at 5.

Plaintiff lost consciousness from the pain, but when he regained consciousness, several officers were standing over him and Defendant Paiz said, "This fucker is still alive." Doc. 1 at 5.Then Defendant Finney said, "that should teach you not to run from us." Doc. 1 at 5.  Plaintiff was then escorted to the car and could barely walk.  Doc. 1 at 6.  Plaintiff was dragged to the car by two officers and placed in the car.  Doc. 1 at 6.  Then Defendant Stratton questioned Plaintiff regarding Plaintiff's attempt to flee and Plaintiff told him that he thought he was fleeing from rival gang members.  Doc. 1 at 6.  Defendant Stratton asked Plaintiff if the gun and drugs were in his possessions and Plaintiff responded "No." Doc. 1 at 6.  Defendant Stratton left and while Defendants King and Gregory physically searched Plaintiff, Plaintiff complained of pain in his right leg and they ignored his complaints. Doc. 1 at 6. Defendants King and Gregory took $407.00, a cell phone, charger, keys, condoms and cigarettes, returned the condoms and cigarrets and placed the rest

3

of the items in two separate brown paper bags.  Doc, 1 at 6.  Plaintiff was returned to the car and waited for over two-and-a-half to three-and-a-half hours while the residence was searched.  Doc. 1 at 6.

Plaintiff was then driven to the Bakersfield Police Department Station (BPDS) and placed ina holding cell despite Plaintiff's numerous pleas for medical treatment for his leg.  Doc. 1 at 6.  After two hours in the holding cell, Defendants King and Littlefield pulled Plaintiff out to take pictures of his tattoos.  Doc. 1 at 6.  Plaintiff told Defendants King and Littlefield that he was bleeding, in pain and losing feeling in his right leg.  Doc. 1 at 6-7.  Defendant King responded, "I don't give a fuck about all that. My concern is to document your tattoos, not your damn leg." Doc. 1 at 7.  Then the officers proceeded to take pictures of Plaintiff's tattoos.  Doc. 1 at 7.  When they raised Plaintiff's right pant leg to take pictures of the tattoos, they said "Oh shit" and asked what happened.  Doc. 1 at 7.  Plaintiff told Defendants King and Littlefield what occurred and they laughed and said that Defendant Finney is a nut job.  Doc. 1 at 7.

Defendants King and Littlefield walked out and about twenty minutes later Defendant John Doe Sergeant looked at Plaintiff's leg, asked Plaintiff what happened and ordered Defendant Lewis and Paiz to transport Plaintiff to the Kern Medical Center for immediate treatment.  Doc. 1 at 7.  Upon arrival to the hospital an unnamed nurse and unnamed doctor asked what happened to Plaintiff's leg.  Doc. 1 at 7. After Plaintiff told them, Defendants Lewis and Paiz told the doctor that Plaintiff was lying and that he injured his leg by jumping a fence.  Doc. 1 at 7.  After the doctor looked over the wound, he said in front of both Defendants Paiz and Lewis that 'This would is consistent with blunt force trauma by some type of heavy metal pipe shaped object."  Doc. 1 at 7.

Plaintiff was then taken for x-rays and treated Plaintiff's injuries, giving Plaintiff eight internal stitches and six staples in order to keep the gash in his right leg closed.  Doc. 1 at 7-8.  Plaintiff was released to the BPD and transported to the Kern County Jail.  Doc. 1 at 8.  As Plaintiff was taken out if the car one of the officers stated "You better keep your fucking mouth shut before you end up like Leon Anderson."  Doc. 1 at 8.  Plaintiff's head was down the entire time and could not see which officer made the statement.  Doc. 1 at 8.

IV.     **Analysis**

A.      **Eighth Amendment Deliberate Indifference**[1]

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)).  The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060).

1.      **Analysis**

Plaintiff alleges that twenty minutes after Defendants King and Littlefield left, an unnamed Defendant John Doe Sergeant looked at Plaintiff's leg and ordered for Plaintiff to get immediate treatment.  Doc. 1 at 7.  Plaintiff's injuries were soon treated at a local hospital.  Plaintiff fails to demonstrate that once Plaintiff was a pretrial detainee at the Bakersfield Police Department Station, that officials were deliberately indifferent to Plaintiff's serious medial injury and thus fails to state a deliberate indifference conditions of confinement claim.

V.      **Conclusions and Order**

Plaintiff's complaint fails to state a prisoner conditions of confinement claim upon which relief may be granted under section 1983.  However, the Court has reviewed the complaint and determined that the remainder of Plaintiff's complaint involves allegations of physical force during arrest rather than conditions of jail confinement.  Additionally, since the events alleged occurred in

---

[1] The deliberate indifference standard applies to a pretrial detainee's right to medical care. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010) (rejecting the *Youngberg* standard and applying the deliberate indifference standard to a pretrial detainee's right to medical care, and noting that pretrial detainees, who are confined to ensure presence at trial, are not similarly situated to those civilly committed).

1   Kern County, the action shall be reassigned to the Honorable Jennifer L. Thurston.

2          Accordingly, the Clerk of the Court SHALL change the administrative designation of the

3   present case to reflect that of a regular civil rights action (440).

4

5   IT IS SO ORDERED.

6   **Dated:   November 5, 2012**            _____/s/ Lawrence J. O'Neill_____
                                            UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28